DOWD, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| Ravenna Rd. Management, Inc., ) | |
| ) | CASE NO. 04:06CV0698 |
| Plaintiff, ) | |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | & O R D E R |
| City of Twinsburg, Ohio ) | (Resolving Docket No. 4). |
| ) | |
| Defendant. ) | |
| ) | |

## **I. INTRODUCTION**

Plaintiff Ravenna Rd. Management, Inc. seeks to offer "erotic dance performances" at the Matchhouse, a nightclub Plaintiff owns within the City of Twinsburg, Ohio. Before the Court is Plaintiff's motion for a preliminary injunction, (Doc. No. 4), to prevent Defendant City of Twinsburg from enforcing the building code restrictions contained in Twinsburg Codified Ordinance Chapter 1354. The building code at issue restricts the location of "adult only entertainment establishments" as defined in the chapter and would prevent Plaintiff from offering adult entertainment at its nightclub.

Defendant City of Twinsburg has defended the restrictions and has filed a brief in opposition. (Docket No. 21). Plaintiff has filed supplemental brief in support of the motion (Docket No. 17). After the parties had an opportunity to conduct discovery, the Court conducted a hearing on May 23, 2006 and the transcript of the hearing has been filed (Doc. No. 23).

For the following reasons, the preliminary injunction motion (Doc. No. 4) is granted.[1]

---

[1] Plaintiff also sought a permanent injunction; however, that request is premature and will be decided by the Court at such time as this case reaches the remedy stage. The preliminary

## II. BACKGROUND

Twinsburg is a city of 18,000 people and comprises thirteen square miles in northern Summit County, Ohio. The City of Twinsburg Charter provides the basis for local self-government and copy of the Charter has been submitted to the Court at Docket No. 20-2. In 1989, Twinsburg first enacted a zoning code which has been most recently issued, on January 23, 2006, as the "Twinsburg Zoning and Development Regulations." A copy of these zoning regulations is attached to the Complaint as Exhibit B.

Plaintiff's Matchhouse nightclub, it is undisputed, is located on Ravenna Road in an area zoned C-2, Community Commercial District. It is further undisputed that the C-2 restriction permits restaurants that serve alcohol and a wide range of commercial uses. It is further undisputed that nowhere in the zoning code, Chapter 11 of the Twinsburg Codified Ordinances, does the City of Twinsburg restrict or regulate adult entertainment businesses.

In 2001, Twinsburg by resolution amended its Building Code, Chapter 14 of the Twinsburg Codified Ordinances, to restrict the location of several forms of adult entertainment including an "adult only entertainment establishment" which is defined as

"a nightclub, bar, restaurant, or similar establishment which features:

(1) Persons who appear in a state of nudity or semi-nudity; or
(2) Live performances which are characterized by the exposure of 'specified anatomical areas' or by 'specified sexual activities;' or
(3) Films, motions pictures, videocassettes, slides, or other photographic or motion picture reproduction that are characterized by the depiction or description of 'specified sexual activities' or 'specified anatomical areas.'"

Twinsburg Codified Ordinances Chapter 1354.02(d)(1-3) (Docket No. 1, Complaint Ex. A).

---

injunction will remain in force until further order of this Court, at a minimum for the duration of this litigation.

2

Chapter 1354.03 restricts the location of adult entertainment in Twinsburg. According to Defendant, the intent was to prohibit adult entertainment businesses from locating within certain buffer zones, i.e. within 500 feet of the three main thoroughfares in Twinsburg and within 1000 feet of a residential zone, public facilities, another adult entertainment business, a school, or a public park or recreation area. The Court has examined Plaintiff's Exhibit 3 to the Deposition of Larry Finch, Twinsburg's Director of Planning and Community Development (Docket No. 19). Exhibit 3 is a map of Twinsburg that was presented and admitted as an exhibit at the May 23, 2006 hearing. The map shows the buffers created by Chapter 1354.03.

The Court is persuaded, and Defendant offered no evidence to the contrary, that when the location restrictions from 1354.03 are applied, no forms of adult entertainment may be offered at any place within the City of Twinsburg unless a conditional use or variance would be approved to change or modify the existing zoning classifications.

Finally, Twinsburg Charter Section 7A.01 provides that no change in Twinsburg's zoning classifications, districts or uses may be made unless approved by a majority of voters.

### III. DISCUSSION

In its motion, Pllaintiff seeks the following:

a preliminary injunction, to be issued afer notice and hearing, restraining defendant...from enforcing Twinsburg's zoning scheme. . .against plaintiff...and directing defendant . . .to issue to plaintiff all permits, certificates and/or licenses necessary to open, operate and use their premises as a nightclub featuring non-obscene erotic dance performances and/or an "adult only entertainment business."

Motion for Preliminary Injunction, at 1 (Doc. No. 4).

This Court must consider four factors in determining whether it should grant a preliminary injunction:

3

(l) the plaintiff's likelihood of success on the merits;

(2) whether the plaintiff may suffer irreparable harm absent the injunction;

(3) whether granting the injunction will cause substantial harm to others;

(4) the impact of an injunction upon the public interest.

Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County, 274 F.3d 377, 400 (6th Cir.2001). "None of these factors, standing alone, is a prerequisite to relief; rather, the court should balance them." Golden v. Kelsey-Hayes Co., 73 F.3d 648, 653 (6th Cir. 1996).

Plaintiff cites two reasons why this court should grant its motion for a preliminary injunction: "(1) Twinsburg's scheme impermissibly restricts access to protected speech by failing to allow adult uses to locate anywhere in the City; and (2) the defendant's location restrictions violate Ohio law and Twinsburg's Charter by imposing zoning restrictions without having first put the restrictions to a vote of the people of Twinsburg and obtained their (majority) approval." Plaintiff's Supplemental Brief, Docket No. 17, at 1.

"It is now well-settled that erotic dancing, even when it involves nudity, constitutes expressive activity 'within the outer perimeters of the First Amendment.'" J.L. Spoons, Inc. v. City of Brunswick, 49 F.2d 1032, 1038 (N.D. Ohio 1999), *quoting from* Barnes v. Glen Theatres, Inc., 501 U.S. 560, 566 (1991). This remains a well-settled issue, although as discussed herein, courts have recognized appropriate time, place and manner restrictions and exertions of the police power to control untoward effects of the permitted expression.

However, there are limits to those time, place and manner restrictions, specifically in terms of how those provisions are adopted, and "so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of

4

communication." Renton v. Playtime Theatres, Inc., 475 U.S. 41, 47 (1986).

Plaintiff argues that Twinsburg's current statutory scheme works a "zone out," meaning that there is no parcel available within the city in which Plaintiff may exercise its First Amendment right to engage in this avenue of expression. As to Plaintiff's first allegation, the Court finds for purposes of this motion for a preliminary injunction, that the operation of Chapter 1354.03 would not permit any forms of adult entertainment to operate in the City of Twinsburg unless there is an amendment to current zoning classifications.

Defendant argues that pursuant to Section 1151.02, Plaintiff may apply for a conditional use permit that the Planning Commission would consider for approval. However, it is not sufficient for Defendant to argue that Plaintiff may seek approval of its requested use when there is no specific time frame for a decision and with the possibility that no application for use would be approved. FW/PBS, Inc. v. City of Dallas, 493 U.S. 215 (1990); Nightclubs, Inc. v. City of Paducah, 202 F.3d 884 (6th Cir. 2000); J.L. Spoons, Inc. v. City of Brunswick, 49 F.2d 1032, 1039 (N.D. Ohio 1999).

Defendant also argues, based upon Schad v. Borough of Mt. Ephraim, 452 U.S. 61 (1981) that "when dealing with primarily residential or rural communities, a court may look beyond the city limits in analyzing the available avenues of communication." Memorandum in Opposition, Docket No. 21, at 6-7.

In Schad, concurring and dissenting opinions suggest that small, rural communities may, under certain limited circumstances, demonstrate that ample avenues of adult entertainment are located in adjoining communities so that they may be denied entry into the smaller community. However, Defendant is unable to produce to the Court any authority for the proposition that such

5

a rule would apply to a community like Twinsburg which, as Exhibit 3 demonstrates, has a larger population and a broader variety of commercial interests located within its boundaries than the rural hamlets referred to in Schad.

Accordingly, the Court finds that Plaintiff has demonstrated a likelihood of success on the merits of its claim that in operation, Chapter 1354 of the Twinsburg Codified Ordinances works an unconstitutional restriction of free speech in violation of the First and Fourteenth Amendments to the United States Constitution.

The Court also finds that Plaintiff has demonstrated a likelihood of success on the merits of its second claim that Defendant's location restrictions in Chapter 1354 violate Ohio law and Twinsburg's Charter by imposing zoning restrictions without having first put the restrictions to a vote of the people of Twinsburg and obtained their majority approval.

By its very terms, Chapter 1354.03 seeks to restrict the location of various forms of what the statute defines as "adult entertainment businesses." At the hearing, the Court specifically asked counsel for Defendant to defend this use of building codes restrictions for purposes traditionally associated with zoning restrictions:

THE COURT: . . .I gather from a rather cursory reading of the City of Twinsburg's opposition to it is anchored in the proposition that the building code controls land use. Is that about it?

MR. DICKINSON: I think so, your Honor, yes.

THE COURT: Yes. And I'm, frankly, not familiar with that proposition of law.
I thought–I thought zoning controls land use, and the idea that building code can control land use is something with which I am not familiar.

MR. DICKINSON: Your honor, we were trying to draw a distinction between land use and use of the establishments on the land.

May 23, 2006 Hearing, Docket No. 22, Tr. at 3-4.

6

After further discussion, Counsel for Defendant admitted that there was no authority for the proposition and conceded that it was "a stretch." Id.  It is a one this Court is unable to make without supporting authority.  On the contrary, a regulation restricting where a business may be located is "the very essence of zoning." J.L. Spoons Inc. v. City of Brunswick, 49 F. Supp. 2d 1032, 1041 (N.D. Ohio 1999). See also Fifth Column v. Village of Valley View, Ohio, 100 F.Supp. 2d 493, 504 (N.D. Ohio 1998), *affirmed* 221 F.3d 1334 (6th Cir. 2000) which cites the Court's unpublished opinion in 102080 Northfield Rd., LLC v. Village of Northfield, 97-CV-1101, slip op. at 6 (Sept. 26, 1997 N.D. Ohio).

Pursuant to its Charter, Twinsburg Charter Section 7A.01, provides that no change in Twinsburg's zoning classifications, districts or uses may be made unless approved by a majority of voters. The Court finds that no such approval was sought when Chapter 1354 was enacted.

Accordingly, the Court concludes that Plaintiff has demonstrated a likelihood of success on the merits of both of its claims, which is the first of four factors to weigh when deciding whether to issue the preliminary injunction. The second factor the Court considers for the granting of a preliminary injunction is whether Plaintiff will suffer irreparable harm if not permitted to engage in the lawful use of its property. Because Plaintiff has demonstrated that it seeks to engage in what is likely to be a lawful use of its property, the Court concludes that the second factor is resolved in Plaintiff's favor as well.

The last two factors to consider are whether granting the injunction will cause substantial harm to others and finally, to consider what is the impact of granting the injunction on the public interest.

Granting the injunction in this case means that Plaintiff may offer adult entertainment

7

that may, in the view of Defendant and others, cause harm to others and would be contrary to the public interest as expressed by the Defendant City of Twinsburg in enacting Chapter 1354.

The Court finds that there is a strong public interest in enacting restrictions on the adult entertainment business. As Chapter 1354.01(b) states, "adult entertainment business, as defined herein, have a negative secondary impact on the health, safety and welfare of the community...." The Ordinance goes on to list those negative effects. As a result, the Court notes, there may be appropriate time, place and manner restrictions that are adopted consistent with the First Amendment.

However, as the Court previously indicated, those restrictions may not "unreasonable limit alternative avenues of communication." Renton v. Playtime Theatres, Inc., 475 U.S. 41, 47 (1986). The Court concludes that any potential harms from the permitted activities at the nightclub are outweighed by the public interest in upholding the rights of free expression found in the First Amendment.

However, in view of the public interest, at the hearing the Court also asked about the limits of what could be offered by way of "erotic dance performances." Counsel for the nightclub agreed that other laws limit the nature of what may legally occur at Plaintiff's venue:

> THE COURT: Let me put it another way. If 1354 didn't exist and you'd applied for a – would you have had to announce what you wanted to use your land for in terms of adult entertainment under the zoning resolution?
>
> MR. MURRAY: No. We would be permitted, absent 1354, we could open our nightclub in the C-2 zone and present---
>
> THE COURT: And do anything you want to do?
>
> MR. MURRAY: Any kind of entertainment that we want, yes, Your Honor, and regardless of its content.

8

> THE COURT: That's the only thing that really troubles me, is if–are there no limits on what you can do by way of live entertainment?
>
> MR. MURRAY: Oh, yes, there are limits. For example--
>
> THE COURT: Where do they come from?
>
> MR. MURRAY: For example, criminal obscenity laws would clearly apply to any obscene performances, Your Honor.
> Liquor regulations that might–actually there aren't very many liquor regulations, but nuisance laws; there's a whole host of drug laws, prostitution laws, obscenity laws.
> There are criminal laws, Your Honor, that limit the content--
>
> THE COURT: Of the adult entertainment?
>
> MR. MURRAY: –of adult entertainment.

May 23, 2006 Hearing on Motion for Preliminary Injunction, Docket No. 23, at 12-13.

With these additional considerations in mind, the Court will proceed to issue the preliminary injunction.

## **IV. CONCLUSION**

For the reasons stated above, Plaintiff Ravenna Road Management, Inc.'s Motion for Preliminary Injunction is GRANTED as follows: Twinsburg is preliminarily enjoined from enforcing City Ordinance 1354.01-03 against Plaintiff, to the extent that, pending final judgment in this matter or until further Order of this Court, Twinsburg may not prohibit Plaintiff from operating its adult entertainment business at its present location of 9408 Ravenna Road, Twinsburg, Ohio for reasons of its location alone. This Order does not, however, preclude Twinsburg from legally enforcing any other valid ordinance against Plaintiff including other applicable building and zoning codes, health and safety ordinances, and other laws related to obscenity and responding to the secondary effects of adult entertainment businesses.

9

    IT IS SO ORDERED.

| | |
|---|---|
|   June 7, 2006 | */s/ David D. Dowd, Jr.* |
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |